UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
ELSEVIER INC.; ELSEVIER B.V.;
ELSEVIER LTD.; ELSEVIER IRELAND LTD.;
JOHN WILEY & SONS, INC.; WILEY
PERIODICALS, INC.; and BLACKWELL
PUBLISHING, LTD.

      Plaintiffs,

   -against-         <u>MEMORANDUM & ORDER</u>
               13-CV-0257(JS)(AKT)
HAROON MEMON; BOB MEMON; KULSOOM MEMON,
HANIF MEMON; SAMINA MEMON a/k/a SAMINA
KHMISA; IQBAL GABA a/k/a IQBAL HUSSAIN
GABA a/k/a IQBAL H. GABA a/k/a MR.
IKQBAL JABA a/k/a M.I. GABA a/k/a MR.
GABA a/k/a DR. I. GABA; HAJI SULEMAN
GAZIANI a/k/a SULEMAN HAJI a/k/a H.
SULEMAN; MOHAMMAD IQBAL GAZIANI a/k/a
MOHAMMAD IQBAL a/k/a MOHAMMAD GAZIANI;
JAVARIA IQBAL a/k/a JAVARIA GAZIANI
a/k/a JAVARIA IQBAL GAZIANI; MUHAMMAD
OWAIS; ABDUL KARAR; IQBAL KAPADWALA;
MUHAMMAD TOBRIA a/k/a M. TOBRIA; ZAHIDA
JAMAL; MUHAMMAD SHAHID; SARDAR AHMED
a/k/a S. AHMED; and FEROZA BANO,

       Defendants.
---------------------------------------X
APPEARANCES
For Plaintiffs:     James A. Moss, Esq.
         Nicole Haff, Esq.
         Balber Pickard Maldonado &
          Van Der Tuin PC
         1370 Avenue of the Americas
         New York, NY 10019

For Defendants
Haroon Memon, Bob
Memon, Kulsoom Memon,
Hanif Memon, Samina
Memon, Abdul Karar:   Arshad Majid, Esq.
         Majid & Associates, P.C.
         300 Rabro Drive, Suite 112
         Hauppauge, NY 11788

```
Iqbal Gaba:              Iqbal Gaba, pro se
                         12 Grays Croft Road
                         Streatham Vale
                         London SW 165UP, U.K.

Haji Suleman Gaziani:    Haji Suleman Gaziani, pro se
                         c/o Latif & Latif Advocates
                         154-155, Sunny Plaza
                         Hasrat Mohani Road
                         Off I.I. Chundrigar
                         Karachi, Pakistan

Iqbal Kapadwala:         Iqbal Kapadwala, pro se
                         772 Franklin Ave.
                         Valley Stream, NY 11580

Mohammad Iqbal Gaziani:  Mohammad Iqbal Gaziani, pro se
                         c/o Latif & Latif Advocates
                         154-155, Sunny Plaza
                         Hasrat Mohani Road
                         Off I.I. Chundrigar
                         Karachi, Pakistan

Remaining Defendants:    No appearances.
```

SEYBERT, District Judge:

This action was commenced on January 16, 2013 by eight publishing companies against sixteen separate individual defendants (collectively, "Defendants"). Plaintiffs Elsevier Inc., Elsevier B.V., Elsevier Ltd., Elsevier Ireland Ltd., John Wiley & Sons, Inc., Wiley Periodicals, Inc., and Blackwell Publishing, Ltd. (collectively, "Plaintiffs") assert claims against Defendants for violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C § 1961 et. seq. ("RICO"), and state law claims for fraud, conspiracy to commit fraud, aiding and abetting fraud, breach of contract, and conversion. Two motions

are pending before the Court. First, defendants Haroon Memon, Bob Memon, Kulsoom Memon, Hanif Memon, Samina Memon a/k/a Samina Khmisa, Muhammad Tobria a/k/a M. Tobria, and Abdul Karar (collectively the "Memon Defendants") move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Docket Entry 84.) Second, Plaintiffs move to strike the Answer filed by defendants Haji Suleman Gaziani and Mohammad Iqbal Gaziani (collectively, the "Gaziani Defendants") and enter a default judgment against them pursuant to Federal Rules of Civil Procedure 37(b)(2) and 55(a). (Docket Entry 146.) For the foregoing reasons, the Memon Defendants' motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART, and Plaintiffs' motion to strike the Gaziani Defendants' Answer is GRANTED.

BACKGROUND[1]

I. Factual Background

Plaintiffs publish leading academic journals in the fields of science, technology, and medicine. (Compl. ¶ 1.) The journals are composed of peer-reviewed articles and are sold to two types of end users--individuals and institutions. (Compl. ¶¶ 1, 29.) Individuals pay a discounted rate for subscriptions, while institutions--such as hospitals, schools, and

---

[1] The following facts are taken from Plaintiffs' Complaint and are presumed to be true for the purposes of this Memorandum and Order.

government entities--pay full price because of their "larger expected readership." (Compl. ¶ 31.) To accomplish the work of selling subscriptions, Plaintiffs use "subscription agents" as intermediaries between themselves and customers. (Compl. ¶ 36.) Using subscription agents is convenient because customers can purchase subscriptions from different publishers at one location and streamline the billing process. (Compl. ¶ 36.)

To protect the higher price that institutions pay for journals, Plaintiffs' terms and conditions prohibit the "resale, or institutional use" of discounted subscriptions sold to individuals. (Compl. ¶¶ 41-45.) However, Plaintiffs' terms and conditions are located in different places. For example, "Wiley's terms and conditions are found on the agent price list and Elsevier's terms and conditions are referenced in its invoices and purchase order forms." (Compl. ¶ 38.) To enforce their terms and conditions, Plaintiffs require subscription agents to "identify the end user" for each sale. (Compl. ¶ 39.) Plaintiffs also rely on end users to correctly identify themselves to the subscription agent as either an institution or individual subscriber. (Compl. ¶ 40.)

Infotech and Progressive are two of Plaintiffs' subscription agents (Compl. ¶ 47.) All of the Defendants are alleged to be associated with these two companies. (See generally Compl.) Defendant Bob Memon, for example, is alleged to be the

owner of Infotech, (Compl. ¶ 60), while defendant Mohammad Iqbal Gaziani is allegedly the owner of Progressive, (Compl. ¶ 66). Plaintiffs claim that Defendants used Infotech and Progressive to perpetrate a subscription fraud scheme against them. (Compl. ¶ 48.) Specifically, Plaintiff allege that Defendants participated in an organized effort to order discounted subscriptions under the names of individuals, then resold the journals they received to institutions at higher prices. (See Compl. ¶¶ 48, 50.) Through this scheme, Defendants allegedly deprived Plaintiffs of the revenue they should have received if the institutions had paid full price for journal subscriptions. (See Compl. ¶¶ 48, 50.)

In total, Plaintiffs claim that defendants purchased 880 discount subscriptions between 1998 and 2010 that were intended for institutional, rather than personal use. (Compl. ¶¶ 52-53.) Plaintiffs' forty-six page Complaint provides some details about the transactions at issue and the purported nature of the scheme. Orders were placed by mail, by phone, and over the internet. (Compl. ¶ 55.) Defendants used their own names, as well as the names of friends and fictitious names. (Compl. ¶ 51.) Many of the subscriptions were ordered to Infotech's business address at 21 Meyer Avenue in Valley Stream, New York, which is co-owned by defendants Haroon Memon and Kulsoom Memon. (Compl. ¶¶ 77-79.) However, subscriptions were also sent to P.O. boxes and other

business and residential addresses.  (Compl. ¶ 96.)

Plaintiffs assert that there is evidence linking Defendants to the same fraudulent scheme.  Specifically, Plaintiffs claim both Infotech and Progressive used 21 Meyers Avenue to purchase purportedly fraudulent discount subscriptions. (Compl. ¶¶ 89, 114.)  In addition, Plaintiffs allege that Defendants are linked together through personal relationships, as evidenced by social media connections.  (Compl. ¶ 122.)  Finally, Plaintiffs claim that checks issued in sequence that were used to pay for certain discount rate subscriptions links a number of the defendants together. (Compl. ¶ 112.)

Below is a recitation of the specific allegations pertaining to each individually named defendant who now moves for judgment on the pleadings:

A. <u>Haroon Memon</u>

Haroon Memon is an owner of Infotech.  (Compl. ¶ 60.) The Complaint alleges that he ordered discount subscriptions in his own name which were not for his own use.  (Compl. ¶ 59.)  The Complaint also alleges that he provided false names and addresses of others to Plaintiffs in order to obtain discount subscriptions. (Compl. ¶ 59.)  Further, the Complaint alleges that Haroon Memon sold the discount subscriptions on a website he operated, www.wholesalebooks.net. (Compl. ¶ 59.)   The Complaint also provides the names of the journal issues and the year they were

purchased.  (Compl. ¶¶ 80-86.)

B. <u>Kulsoom Memon</u>

The Complaint alleges, upon information and belief, that Kulsoom Memon is a co-owner of the house located at 21 Meyers Avenue, Infotech's business address.  (Compl. ¶ 79.)  An email as well as checks numbered in sequence that were received as payment for magazine subscriptions links him to the purchasing activities of several other defendants.  (Compl. ¶¶ 112, 121.)  The Complaint also provides the names and dates of various journals he purchased from Defendants. (<u>See</u> Compl. Schedule A.)

C. <u>Hanif Memon</u>

Hanif Memon is the son of Haroon Memon.  The Complaint alleges, upon information and belief, that Hanif Memon is one of the "leaders" of Infotech.  (Compl. ¶ 58.)  The Complaint further alleges that Hanif Memon ordered and received discount subscriptions in his own name that were not for his personal use and registered websites on behalf of Infotech to resell journals to institutions. (Compl. ¶ 61, 94.)  The Complaint also provides the names and dates of various journals that Hanif Memon individually purchased from Defendants.  (<u>See</u> Compl. Schedule A.)

D. <u>Samina Memon</u>

The Complaint asserts that Samina Memon is one of the "leaders" of Infotech and the daughter of Haroon Memon.  (Compl. ¶¶ 58, 62.).  She resides at 21 Meyer Avenue, Infotech's

business address, and ordered discount subscriptions in her own name to that address. (Compl. ¶¶ 16, 147-48.) Plaintiffs claim that Samina Memon ordered and received discount subscriptions in her name that were not for her personal use and provides the names and dates of various journals that she purchased. (See Compl. ¶¶ 62, 87, 88, Schedule A.)

E. Abdul Karar

The Complaint alleges upon information and belief that Abdul Karar is one of the "leaders" of Infotech. (Compl. ¶ 58.) Abdul Karar allegedly ordered and received discounted subscriptions in his own name that were not for his personal use. (Compl. ¶ 63.) He ordered discount subscriptions to a P.O. box used by other alleged co-conspirators to order similar discount subscriptions. (Compl. ¶ 96.) The Complaint also provides the names and dates of various journals that he purchased from Defendants. (See Compl. Schedule A.)

F. Muhammad Tobria

The Complaint alleges upon information and belief that Muhammad Tobria is one of the "leaders" of Infotech and that he ordered discounted subscriptions in his own name that were not for his personal use. (Compl. ¶¶ 58, 65.) The Complaint identifies the names and dates of the journals that he purchased and alleges that he used the same P.O. box to order subscriptions as Abdul Karar. (Compl. ¶ 96, Schedule A.)

II. <u>Procedural Background</u>

Plaintiffs' commenced this action on January 16, 2013, alleging that Defendants violated RICO, and asserting state law causes of action for fraud, conspiracy to commit fraud, aiding and abetting fraud, breach of contract, and conversion. The Memon Defendants filed an Answer on March 6, 2013. (Memon Ans., Docket Entry 18.) The Memon Defendants now move for judgment on the pleadings dismissing the case in its entirety. In seeking dismissal of the RICO claims (Counts I and II), Defendants make the following arguments: (1) the Complaint fails to plead the predicate acts with particularly in compliance with Rule 9(b); (2) the Complaint fails to plead that Memon Defendants engaged in a pattern of racketeering activity; (3) the Complaint fails to properly allege that the Memon Defendants participated in a RICO enterprise; (4) the Plaintiff is time-barred from alleging any violations that occurred before January 2009; and (5) the Complaint fails to adequately plead a RICO conspiracy. (Defs.' Br., Docket Entry 84-4, at 5-15.) The Memon Defendants also seek dismissal of the Plaintiff's state law claims for common law fraud, conspiracy to commit fraud, aiding and abetting fraud, breach of contract, and conversion. (Defs.' Br. at 15-21.)

The Gaziani Defendants answered the Complaint on March 12, 2013. (Docket Entry 20.) Plaintiffs move to strike their Answer and enter a default judgment pursuant to Federal Rules of

Civil Procedure 37(b)(2) and 55(a) because of the Gaziani Defendants' failure to participate in the discovery process. (Pls.' Br. Supp. Mot. Strike, Docket Entry 146, at 2.)

<u>DISCUSSION</u>

The Court will first address the Memon Defendants' motion for judgment on the Pleadings.

I.  <u>The Memon Defendants' Motion for Judgment on the Pleadings</u>

A. <u>Legal Standard</u>

The standard for evaluating a motion for judgment on the pleadings, pursuant to Rule 12(c), is the same as the standard for a motion to dismiss under Rule 12(b).  <u>See</u> <u>Karedes v. Ackerley Group, Inc.</u>, 423 F.3d 107, 113 (2d Cir. 2005).  In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); <u>accord</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009).  <u>First</u>, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Iqbal</u>, 556 U.S. at 678; <u>accord</u> <u>Harris</u>, 572 F.3d at 72. <u>Second</u>, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss.  <u>Iqbal</u>, 556 U.S. at

679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

The Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

B. RICO Claims

The Memon Defendants move for judgment on the pleadings dismissing Plaintiffs' RICO claims. RICO was enacted to "'prevent organized crime from infiltrating America's legitimate business organizations.'" Manley v. Doby, No. 12-CV-4835, 2012 WL 5866210, at *3 (E.D.N.Y. Nov. 19, 2012) (quoting Moccio v. Cablevision Sys. Corp., 208 F. Supp. 2d 361, 371 (E.D.N.Y. 2002)). The Act contains a criminal provision, see 18 U.S.C. § 1962, and a civil provision, see 18 U.S.C. § 1964. The civil provision permits the recovery of treble damages and reasonable attorney's fees for any person who

is "injured in his business or property by reason of a violation of" the criminal provision.  18 U.S.C. § 1964(c).

To establish a civil RICO claim, "a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001) (quoting Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp., 101 F.3d 900, 904 (2d Cir. 1996)).  The Second Circuit has held that a RICO plaintiff has two pleading burdens.  First, a plaintiff "must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, commonly known as criminal RICO."  Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983) (internal quotation marks omitted).  To satisfy this burden, the plaintiff must allege the following "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Id. (quoting 18 U.S.C. § 1962(a)-(c)).  A plaintiff must adequately allege these seven elements "before turning to the second burden- -i.e., invoking RICO's civil remedies."  Id. (citation omitted). To satisfy the second burden, a plaintiff "must allege that he was

'injured in his business or property by reason of a violation of section 1962.'" Id. (quoting 18 U.S.C. § 1964(c)).

1. Predicate Acts

The Memon Defendants argue that the Complaint fails to plead the predicate acts of mail and wire fraud with sufficient particularity. (Defs.' Br. at 5-8.) The Court disagrees, however, because there is sufficient detail in the Complaint to put the Memon Defendants on notice of their allegedly fraudulent acts.

A RICO pattern of racketeering activity must consist of two or more predicate defined as "any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481–82, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) (quoting 18 U.S.C. § 1961(1)). Here, Plaintiffs allege that Defendants engaged in mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. (Compl. ¶ 55.) Federal Rule of Civil Procedure 9(b) requires allegations sounding in fraud to be "state[d] with particularly." FED. R. CIV. P. 9(b). To comply with 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the

statements were fraudulent." <u>Lerner v. Fleet Bank N.A.</u>, 459 F.3d
273, 290 (2d Cir. 2006) (internal quotation marks and citation
omitted). However, Rule 9(b) provides that "intent, knowledge,
and other conditions of a person's mind may be alleged generally."
FED. R. CIV. P. 9(b).

Here, the Complaint describes the acts the Memon
Defendants took to further a subscription fraud scheme with
sufficient particularity to survive a motion to dismiss. The
Complaint alleges that each Memon Defendant ordered discount
subscriptions, claiming that they were for personal use in order
to resell the subscriptions to institutions at a higher price.
Moreover, the Complaint contains a chart listing names and years
of the journals that were purchased by each Memon Defendant in
furtherance of their scheme. <u>See</u> <u>Elsevier Inc. v. W.H.P.R., Inc.</u>,
692 F. Supp. 2d 297, 304 (S.D.N.Y. 2010) (holding that the
defendants were "sufficiently advised" that they had engaged in
fraudulent conduct by "placing subscription orders under false
pretenses" when each order was "identified by both the name of the
journal and the approximate time the subscription was placed");
<u>Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.</u>, No. 12-
CV-6383, 2014 WL 1801139 (E.D.N.Y. May 7, 2014) ("Under the
circumstances, the specificity requirement of 9(b) requires no
more regarding the who, what, where, when, how, and why of the

alleged fraud in this case.") (quoting <u>Allstate Ins. Co. v. Lyons</u>, 843 F. Supp. 2d 358, 373 (E.D.N.Y. 2012)).

The Memon Defendants argument that Plaintiffs did not sufficiently plead fraudulent intent is also without merit. Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Second Circuit explained that "[t]he requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290-91 (2d Cir. 2006) (quoting <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994). Here, Plaintiffs sufficiently pleaded that the Memon Defendants had the motive and opportunity to commit fraud. The Complaint contends that the Memon Defendants were all associated subscription agent organizations and therefore were aware of the price difference between discounted individual subscriptions and full price institutional subscriptions. Moreover, as associates of subscription agent businesses, the Memon Defendants had the means to resell subscriptions purchased at a discount to institutions. Thus, Defendants are sufficiently advised of their purported fraudulent conduct by the allegations of the Complaint.

2.  Pattern of Racketeering Activity

To establish a "pattern of racketeering activity," the predicate acts of racketeering activity must 'amount to or pose a threat of continued criminal activity.'" Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999) (quoting H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 2900, 106 L. Ed. 2d 195 (1989)).  This continuity requirement "can be satisfied either by showing a 'closed-ended' pattern--a series of related predicate acts extending over a substantial period of time--or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during with the predicate acts were performed."  Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008) citing H.J., Inc., 492 U.S. at 241, 109 S. Ct. at 2902.

a.  Open-Ended Continuity

The Memon Defendants claim that Plaintiffs did not sufficiently allege open-ended continuity because they cannot show that the acts of wire and mail fraud perpetrated by Kulsoom Memon, Hanif Memon, and Abdul Karar continued beyond their respective ordering activities in 2002, 2008, and 2010. (Defs.' Br.  at 8-10.)

Open-ended continuity exists "even if the predicate acts were not engaged in over an extended period of time.  Instead,

there must be a threat of continuing criminal activity 'extending indefinitely into the future.'" SKS Constructors, Inc. v. Drinkwine, 458 F. Supp. 2d 68, 79-80 (E.D.N.Y. 2006) (quoting H.J., Inc., 492 U.S. at 242, 109 S. Ct. at 2901). "In assessing whether or not the plaintiff has shown open-ended continuity, the nature of the RICO enterprise and of the predicate acts are relevant." Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). When an enterprise engages in legitimate business activities, as opposed to an organization that solely exists for criminal purposes, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity. Id.; see also GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 466 (2d Cir. 1995).

Here, Plaintiffs have sufficiently pleaded open-ended continuity. Defendants allege that predicate acts of fraudulently purchasing discount subscriptions for resale to institutions was the regular means by which Defendants' group operated. See SKS Constructors, 458 F. Supp. 2d at 80 ("Where defendants are engaged in a legitimate business, open ended continuity can exist if the predicate acts are the regular way in which the enterprise conducts its business.") Once an enterprise has been established, it is necessary look at the criminal activities of the enterprise as a

whole, rather than viewing each member's activities in isolation.
See G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 545
(S.D.N.Y. 2002) (finding open-ended continuity because "the
falsification of [ ] affidavits were part of a larger scheme that
was part of [a company's] regular course of business").  Thus, the
mere fact that some of the Memon Defendants ceased their individual
ordering activities in 2002, 2007, and 2010 does not establish, at
the motion to dismiss stage, that the organization as a whole
ceased operation.  Given that Defendants' purportedly fraudulent
activity occurred consistently from 1998 to 2011, Plaintiffs have
sufficiently alleged open-ended continuity.

### b. Closed-Ended Continuity

The Memon Defendants claim that closed-ended continuity
was also not sufficiently stated because the Complaint only
provides the year of each alleged instance of mail and wire fraud,
not the exact date each order was placed.  (Defs.' Br. at 11.)
"To satisfy closed-ended continuity, the plaintiff must prove a
series of related predicates extending over a substantial period
of time."  Cofacredit, 187 F.3d at 242 (internal quotation marks
and citation omitted); accord Spool, 520 F.3d at 184.  Although
there are a variety of non-dispositive factors relevant to the
inquiry of whether closed-ended continuity exists, including "the
length of time over which the alleged predicate acts took place,
the number and variety of acts, the number of participants, the

number of victims, and the presence of separate schemes," GICC Capital Corp., 67 F.3d at 467, "closed-ended continuity is primarily a temporal concept," Cofacredit, 187 F.3d at 242. However, "[a]t the pleading stage, . . . whether 'defendants' actions are continuing in nature or isolated or sporadic will be the subject of proof at trial." Dymm v. Cahill, 730 F. Supp. 1245, 1261 (S.D.N.Y. 1990) (quoting Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc., 879 F.2d 10, 18 (2d Cir. 1989)).  Here, the Complaint alleges that Defendants engaged in a subscription fraud scheme which spanned more than a decade and included hundreds of alleged predicate acts.  Thus, the Complaint sufficiently alleges a closed period of continuing conduct spanning multiple years. Just because the exact date of each subscription order was not listed in the Complaint does not warrant dismissal for failure to plead a pattern of racketeering activity at this stage.

   3. Participation in a RICO Enterprise

   A RICO "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The Memon Defendants concede that Plaintiffs properly alleged the existence of three separate RICO enterprises: (1) Infotech, (2) Progressive, and (3) an association in fact composed of individuals affiliated with both Infotech and Progressive.  (Defs.' Br. at 12; Pls.' Opp. Br.,

Docket Entry 89, at 15.)  The Memon Defendants argue, however, that the Complaint does not allege facts demonstrating they actually participated in any of these enterprises. (Defs.' Br. at 12.)

A plaintiff alleging a violation of RICO must allege in the complaint that she "participat[ed], directly or indirectly, in the conduct of such enterprises affairs."  18 U.S.C.§ 1962(c). This requirement is analyzed under the "operation or management test."  <u>DeFalco</u>, 244 at 312 n.16.  Under that test, "in order to 'conduct or participate directly or indirectly, in the conduct of [an] enterprise's affairs' . . . 'one must participate in the operation or management of the enterprise itself,' and play 'some part in directing the enterprise's affairs,'"  <u>United States v. Allen</u>, 155 F.3d 35, 40 (2d Cir. 1998) (quoting <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 185, 113 S. Ct. 1163, 1173, 122 L. Ed. 2d 525 (1993) (emphasis in original)).  Although the operation and management test has been found to be a "relatively low hurdle for plaintiffs to clear" at the pleading stage, <u>First Capital Asset Mgmt, Inc. v. Satinwood, Inc.</u>, 385 F.3d 159, 176 (2d Cir. 2004), it is insufficient to merely "allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise," <u>Elsevier</u>, 692 F. Supp. 2d at 307-08 (citing <u>City of N.Y. v. Smokes-Spirits.com. Inc.</u>, 541 F.3d 425, 449 (2d Cir. 2008),

rev'd on other grounds, 559 U.S. 1, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010)).

Here, the Complaint sufficiently pleads that Haroon Memon and Kulsoom Memon exercised some degree of control over one or more RICO enterprises. Haroon Memon allegedly ordered discount subscriptions in his own name and provided plaintiffs with false names and addresses. (Compl. ¶ 59.) Haroon Memon also allegedly operated a website on which he sold the discounted journals. (Compl. ¶ 59.) Similarly, Kulsoom Memon is allegedly the co-owner of 21 Meyers Avenue, which is Infotech's address and the location where numerous discount subscriptions were shipped. (See Compl. ¶ 79.) Moreover, checks in sequence link Kulsoom Memon to the ordering activities of several other Defendants. (Compl. ¶ 112.)

However, the Complaint does not plead sufficient facts showing that Hanif Memon, Samina Memon, Abdul Karar, or Muhammad Tobria exercised control over a RICO enterprise. Rather, the Complaint only states that they ordered discount subscriptions under false pretenses and states, in conclusory fashion, that they are each "leaders" of Infotech. (See Compl. ¶¶ 61-62, 63, 65.) Thus, from the face of the Complaint, Hanif Memon, Samina Memon, and Abdul Karar and Muhammad Tobria only provided a service that was helpful to the association in fact enterprise without exercising direct control over it. Since Plaintiff must plead that all of the Memon Defendants "played some part in directing

the enterprise's affairs," Reves, 507 U.S. at 179, 113 S. Ct. at 1170, the Civil RICO claims against Hanif Memon, Samina Memon, Abdul Karar, and Muhammad Tobria are DISMISSED WITHOUT PREJUDICE. However, Plaintiffs are GRANTED leave to replead.

C. Timeliness

The Memon Defendants argue that Plaintiffs' RICO claims are barred by the four-year statute of limitations because Plaintiffs should have detected Defendants' alleged fraud years earlier. (Defs.' Br. at 12-13.) Plaintiffs argue in opposition that the Memon Defendants' statute of limitations argument is premature because it is unclear when Plaintiffs' discovered or should have discovered Defendants' fraud. (Pls.' Opp. Br. at 19.)

The four-year statute of limitations for a civil RICO action "begins to run . . . when the plaintiff discovers--or should have reasonably discovered--the alleged injury." World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 328 F. App'x 695, 697 (2d Cir. 2009) (quoting McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 233 (2d Cir. 2008). In addition, "civil RICO actions are subject to a 'separate accrual rule'; that is, 'a new claim accrues, triggering a new four-year limitations period each time plaintiff discovers, or should have discovered an injury caused by the predicate RICO violations.'" State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212, 225 (E.D.N.Y. 2009) (quoting Bingham v. Zolt, 66 F.3d 553, 560 (2d Cir. 1995)). Here, Defendants tried

to conceal their fraud by using different names and addresses to disguise their ordering activities. It is therefore premature to rule on the Memon Defendants' statute of limitations defense because there is insufficient evidence to determine when Plaintiffs should have discovered Defendants' scheme.

    D.  <u>RICO Conspiracy</u>

        The Memon Defendants argue that Plaintiffs' RICO conspiracy claim brought pursuant to 18 U.S.C. § 1962(d) must be dismissed because the Complaint does not set forth sufficient facts suggesting that Defendants agreed to participate in a conspiracy. (Defs.' Br. at 14-15.) Plaintiffs counter that Defendants' intention to participate in a conspiracy can be inferred from their conduct. (Pls.' Opp. Br. at 19.)

        To plead a RICO conspiracy claim with sufficient particularity, the complaint must allege facts "implying an [ ] agreement involving each of the defendants to commit at least two predicate acts." <u>Hecht v. Commerce Clearing House, Inc.</u>, 897 F.2d 21, 25 (2d Cir. 1990). "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." <u>Id.</u> Thus, the mere allegation that defendants engaged in "parallel conduct," standing alone, "affords an insufficient basis for inferring that an agreement was reached." <u>Elsevier, Inc. v. W.H.P.R., Inc.</u>, 692 F. Supp. 2d 297, 313 (S.D.N.Y. 2010);

see also <u>Naso v. Park</u>, 850 F. Supp. 264, 275 (S.D.N.Y. 1994) (finding that "[t]he Complaint simply does not make specific factual allegations from which we can conclude that defendants consciously agreed to commit predicate acts with knowledge of the scope of the enterprise and intent to further its affairs"); <u>Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg</u>, 660 F. Supp. 1362, 1372 (D. Conn. 1987) (explaining that "although [ ] parts of the amended complaint set forth in detail various alleged acts . . . they do not allege any objective manifestation of an agreement to participate in a RICO enterprise through the commission of predicate acts").

In support of Plaintiffs' conspiracy claim, the Complaint alleges simply that "Defendants conspired to defraud Plaintiffs by agreeing, between and among each other, to purchase, or cause the purchase of, subscriptions at discounted rates from Plaintiffs." (Compl. ¶ 141.) Other portions of the Complaint discuss social links between Defendants. For example, discount subscriptions ordered by various Defendants were shipped to the same address, 21 Meyers Avenue, and the Complaint claims that social media connections link various defendants to one another. (See Compl. ¶¶ 89, 114 115). However, the fact that Defendants engaged in parallel conduct and shared social connections is not sufficient to allege a RICO conspiracy. Therefore, Plaintiffs' RICO conspiracy claim is DISMISSED. For the same reasons,

Plaintiffs' fourth cause of action for conspiracy to commit fraud is DISMISSED. See In re Monahan Ford Corp. of Flushing, 340 B.R. 1, 36 (Bankr. E.D.N.Y. 2006) (dismissing a conspiracy to commit fraud claim for failure to plead, with sufficient particularity, that the parties entered into an agreement to engage in fraud).

### E.  Aiding and Abetting Fraud

The Memon Defendants argue that Plaintiffs' aiding and abetting fraud must claim be dismissed because Plaintiffs did not plead sufficient facts establishing that all of the Memon Defendants had knowledge of the fraudulent scheme. (Defs.' Br. at 19.)  The Court agrees.

To state a claim for aiding and abetting fraud under New York law, a plaintiff must plead facts showing: "1) the existence of a fraudulent scheme, 2) that the defendant had actual knowledge of the fraud, and 3) that the defendant provided substantial assistance to the fraudulent scheme." Rosner v. Bank of China, 349 F. App'x 637, 638 (2d Cir. 2009) (citation omitted). Wight v. BankAmerica Corp., 219 F.3d 79, 91 (2d Cir. 2000) (collecting cases).  The allegation that the Defendants had actual knowledge of the fraudulent scheme need not meet the heightened pleading requirements of Rule 9(b). See Wight, 219 F.3d at 91. Nevertheless, the Complaint must allege some facts tending to show that Defendants' had knowledge of the fraudulent scheme at issue. Mazzaro de Abreu v. Bank of Am. Corp., 525 F. Supp. 2d 381, 389

(S.D.N.Y. 2007) (holding that the plaintiff properly alleged that bank defendant had knowledge of fraud because, <u>inter alia</u>, they made transfers to "entities [they] knew were 'black market currency traders'") (citation omitted).  Here, Plaintiffs failed to allege sufficient facts showing that Hanif Memon, Samina Memon, Abdul Karar, and Muhammad Tobria knew that Defendants were engaged in a subscription fraud scheme.  The Complaint merely alleges that these defendants ordered subscriptions in their own names, shared social connections, and "[u]pon information and belief," knew about purported subscription fraud scheme.  These bare allegations are not enough.  Therefore, Plaintiffs' claim for aiding and abetting fraud is DISMISSED WITHOUT PREJUDICE.

      F.   <u>Common Law Fraud</u>

      The Memon Defendants argue that Plaintiffs' common law fraud allegations must be dismissed because they are duplicative of their breach of contract claims.  (Defs.' Br. at 17.)  In opposition, Plaintiffs argue that their fraud allegations are different from their breach of contract claims because the two causes of action rely on distinct conduct.  (Pls.' Opp. Br. at 23.)

      Under New York law, "a cause of action to recover damages for fraud does not lie when the only fraud alleged relates to a breach of contract."  <u>Jim Longo, Inc. v. Rutigliano</u>, 251 A.D.2d 547, 548, 674 N.Y.S.2d 730 (2d Dep't 1998).  However, "parallel

fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 183 (2d Cir. 2007); see also Koch v. Greenberg, No. 07-CV-9600, 2008 WL 4778813, at *4 (S.D.N.Y. Oct. 31, 2008). Plaintiffs' common law fraud claim overlaps to some degree with their breach of contract allegations because both causes of action are based upon the premise the Defendants were buying discount journals to sell to institutions at a higher price. However, the Complaint alleges conduct that specifically sounds in fraud--namely that Defendants provided Plaintiffs with false end-user information, including fake names in an effort to secure a larger supply of discount subscriptions. Such conduct does not fit squarely within Plaintiffs' breach of contract claim. Since Plaintiffs' fraud allegation will "not expand the scope of discovery, it makes sense to permit [them to] . . . proceed at this stage, and to revisit the issue of whether the contract claim subsumes the fraud claim after discovery, via a summary judgment motion." Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 268 (S.D.N.Y. 2008).

G.  Breach of Contract Claims

The Memon Defendants ask the Court to rule that any breach of contract allegations that occurred before January 16, 2007 be barred by New York's six-year statute of limitations. (Defs.' Br. at 20.)  Plaintiffs concede that the statute of limitations for breach of contract claims is six years, but argues that the limitations period should be equitably tolled because the Memon Defendants concealed their breaches of contract.  (Pls.' Opp. Br. at 23.)

In New York, the statute of limitations for breach of contract claims is six years.  See N.Y. CPLR § 213.  However, the doctrine of equitable tolling can permit a "claim to be filed outside of the applicable limitations period where some action on the plaintiff's part made it such that the defendants were unaware that the cause of action existed."  Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia, 23 F. Supp. 2d 439, 446 (S.D.N.Y. 1998); Long v. Frank, 22 F.3d 54, 58 (2d Cir. 1994), cert. denied, 513 U.S. 1128, 115 S. Ct. 938, 130 L. Ed. 2d 883 (1995).  The Court already determined that the Complaint sets forth facts showing that Defendants took steps to conceal their scheme and neither party can estimate, at this juncture, when Plaintiffs discovered Defendants' conduct.  Therefore, the Memon Defendants' statute of limitations argument is premature.

H.  Conversion

The Memon Defendants claim that Plaintiffs' conversion claim must be dismissed because it is duplicative of their breach of contract claim.  (Defs.' Br. at 20-21.)  Plaintiffs assert that the Memon Defendants' argument "ignores [the] allegations that the Memon Defendants took possession of Plaintiffs' revenue."  (Pls.' Opp. Br. at 24.)

Under New York Law, "[c]onversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession."  LoPresti v. Terwilliger, 126 F.3d 34, 41 (2d Cir. 1997).  "To maintain a claim for conversion, a plaintiff must show: (1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." Moses v. Martin, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (internal quotation marks and citation omitted).  However, "to sustain a conversion claim, a plaintiff must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights."  Fraser v. Doubleday & Co., 587 F. Supp. 1284, 1288 (S.D.N.Y. 1984); AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc., No. 04-CV-8832, 2006 WL 1593884, at *4 (S.D.N.Y.

June 7, 2006) (finding a conversion claim to be duplicative of a breach of contract claim when the defendant merely "transferred and retained monies that contractually belonged to [the p]laintiff"). Plaintiffs' conversion claim is based upon the premise that Defendants "transferred and retained monies that contractually belonged to Plaintiff." Id. In other words, the only reason Defendants' resale of the journals at issue was wrongful was because Defendants breached their written promises. Plaintiffs' conversion claim therefore does not addresses a wrong separate and apart from their breach of contract claim. Since Plaintiffs' conversion claim fails as a matter of law, it is therefore DISMISSED WITH PREJUDICE.

II. <u>Plaintiffs' Motion for a Default Judgment</u>

Plaintiffs move pursuant to Federal Rule of Civil Procedure 37 to strike the Gaziani Defendants' Answer and enter a default judgment against them because of their failure to participate in the discovery process. (Pls.' Br. Supp. Mot. Strike, at 1.)

A. <u>Relevant Facts</u>

On January 17, 2013, Plaintiffs attempted to serve the Gaziani Defendants through the Hague Convention (Haff Decl., Docket Entry 146-1, ¶ 3.) The Gaziani Defendants responded by submitting a document on March 12, 2013 titled "Written Submission/Objections on Behalf of Muhamad Iqbal Gaziani and Haji

Suleman Gaziani," which was docketed as the Gaziani Defendants'
Answer.  (Docket Entry 20.)  Plaintiffs served discovery requests
and interrogatories on the Gaziani Defendants in December 2013 but
the Gaziani Defendants never responded.  (Haff. Decl. ¶¶ 6-8.)
The Gaziani Defendants have never appeared at a discovery
conference and, apart from submitting an Answer and letters to the
Court, they have not participated in this case.  (See Order to
Show Cause, Docket Entry 99 at 3; Defs.' January 1, 2015 Ltr.,
Docket Entry 161, at 1-2.)

On July 18, 2014, Magistrate Judge Tomlinson issued an
Order to Show Cause directing the Gaziani Defendants to appear on
September 12, 2014 and show cause why the Court should not
recommend that their Answer be stricken.  (Order to Show Cause at
3-4.)  The Order to Show Cause also stated:

> THE GAZIANI DEFENDANTS ARE HEREBY
> OFFICIALLY ON NOTICE THAT ANY FAILURE TO
> APPEAR AT THE SEPTEMBER 12, 2014 ORDER TO
> SHOW CAUSE HEARING AT 10:30 A.M., AS
> ORDERED BY THIS COURT, MAY RESULT IN THIS
> COURT'S RECOMMENDATION TO JUDGE SEYBERT
> THAT THEIR ANSWER BE STRICKEN AND THAT
> PLAINTIFFS BE PERMITTED TO MOVE FORWARD
> WITH A MOTION FOR ENTRY OF A DEFAULT
> JUDGMENT AGAINST THEM, FOR THEIR FAILURE
> TO COMPLY WITH THE COURT'S ORDERS AND
> FAILURE TO COMPLY WITH THEIR DISCOVERY
> OBLIGATIONS.

(Order to Show Cause at 4 (emphasis in original).)  The Gaziani
Defendants responded by submitting a document titled "Application
for Exemption for Appearance," asking the Court to find that they

were "exempt" from appearing. (See Gaziani Affidavit, Docket Entry 109, ¶ 2.) The Affidavit also asked the Court to direct Plaintiffs' to engage a lawyer in Pakistan to sue them locally. (See Gaziani Affidavit ¶ 4.) In light of the Gaziani Defendants' response, Judge Tomlinson issued an Order on August 20, 2014 directing Plaintiffs' counsel to contact the Gaziani Defendants in an effort to facilitate their appearance in Court via Skype. (See August 18, 2014 Order, Docket Entry 110, at 2.) Plaintiffs' counsel attempted to contact the Gaziani Defendants at least ten different times--by email, phone, and through Skype--but the Gaziani Defendants could not be reached. (Haff. Decl. ¶¶ 16-35; October 28, 2014 Minute Order, Docket Entry 138.)

On September 30, 2014, a hearing on the Order to Show Cause was held, but the Gaziani Defendants did not appear. Following the hearing, Judge Tomlinson authorized Plaintiffs to move to strike the Gaziani Defendants' Answer and enter a default judgment against them. (October 28, 2014 Minute Order at ¶ 1) Judge Tomlinson noted that the Gaziani Defendants "have not complied with their discovery obligations." (October 28, 2014 Minute Order at ¶ 1.) In response to Plaintiffs' motion to strike the Gaziani Defendants submitted a letter to the Court stating that they were facing "difficulty [] follow[ing] US Civil Laws" and again asking Plaintiffs to bring suit against them locally in

Pakistan. (Defs.' January 16, 2015 Ltr., Docket Entry 161, at 1-2.)

B. <u>Default Judgment</u>

Rule 37 allows the Court to impose sanctions on a party that fails to Comply with discovery orders. See FED. R. CIV. P. 37(b)(2). "The imposition of sanctions under Rule 37 lies within the discretion of the district court," and may including striking pleadings or entering a default judgment. <u>Stirrat v. Ace Audio/Visual, Inc.</u>, No. 02-CV-2842, 2004 WL 2212096, at *1 (E.D.N.Y Sept. 24, 2004). Rule 55(a) also allows the Court to enter a default judgment against a party for failing to "plead or otherwise defend." FED. R. CIV. P. 55(a).

Although entering a default judgment is a "harsh remedy," <u>Dodson v. Runyon</u>, 86 F.3d 37, 39 (2d Cir. 1996), when discovery orders are willfully breached, imposing a litigation-ending sanction may be appropriate. <u>Bambu Sales, Inc. v. Ozak Trading, Inc.</u>, 58 F. 3d 849, 853 (2d. Cir. 1995). Courts have considered the following factors before deciding whether to enter a default judgment: "(a) willfulness or bad faith on the part of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party had been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party." <u>Am. Cash Card Corp. v. AT&T Corp.</u>, 184 F.R.D. 521,

524 (S.D.N.Y. 1999) <u>aff'd</u> <u>Am. Cash Card Corp. v. AT&T Corp.</u>, 210
F.3d 354 (2d Cir. 2000).

Here, the equities weigh in favor of striking the Gaziani
Defendants' Answer and entering a default judgment. The Court has
made every effort to accommodate the Gaziani Defendants and attempt
to compel their appearance. But beyond submitting an Answer and
three letters, the Gaziani Defendants have not participated in
this case in any meaningful way, and have repeatedly disobeyed the
Court's orders. It can only be surmised that the Gaziani
Defendants' conduct is willful and they have no intention of
litigating this action. <u>Silverman & Silverman v. Pacifica
Foundation</u>, 11-CV-1894, 2014 WL 3724801, at *4 (striking the
defendant's answer and entering a default judgment when defendant
provided "minimal discovery . . . failed to communicate with [the]
plaintiff and [] repeatedly failed to follow . . . [the] court's
orders"); <u>Chopen v. Olive Vine, Inc.</u>, No. 12-CV-2269, 2014 WL
198814, at *3 (E.D.N.Y. Jan. 15, 2014) (striking answer and
entering a default judgment when the defendant repeatedly failed
to appear at scheduled discovery conferences). Thus, no lesser
sanction is appropriate. Plaintiffs' motion to strike the Gaziani
Defendants' Answer and enter a default judgment is therefore
GRANTED.

C.    _Damages_

"A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." Krevat v. Burgers to Go, Inc., No. 13-CV-6258, 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014).  However, entry of a default judgment does not resolve the question of damages.  "Where there are multiple defendants who may be held jointly and severally liable and 'some but not all defendants have defaulted, 'the courts have consistently held that it is appropriate to enter judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting party . . . .'"  Krevat, 2014 WL 4638844, at *15 (quoting Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 978 (S.D.N.Y. 1992); Long Island Hous. Servs. v. Greenview Props., Inc., No. 07-CV-0352, 2008 WL 150222, at *1 (E.D.N.Y. Jan. 11, 2008) ("When there are multiple defendants who may be jointly and severally liable for damages alleged by plaintiff, and some but less than all of those defendants default, the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved.").  Although the Gaziani Defendants refuse to participate in this case, the Memon Defendants and others are actively litigating Plaintiffs' claims.  It would therefore be premature to discuss damages because of the possibility of inconsistent rulings.

III. <u>Leave to Amend</u>

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." <u>Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999)</u>; see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). "Nonetheless, courts may deny leave to replead where amendment qualifies as futile." <u>Herbert v. Delta Airlines, No. 12-CV-1250, 2014 WL 4923100, at *5 (E.D.N.Y. Sept. 30, 2014)</u> (citing <u>Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)</u>). Therefore, Plaintiffs are granted leave to replead their RICO claims brought against Hanif Memon, Samina Memon, Abdul Karar, and Muhammad Tobria; their RICO conspiracy claim brought pursuant to 18 U.S.C. 1962(d); their aiding and abetting fraud claim; and their conspiracy to commit fraud claim. Because Plaintiffs' conversion claim fails as a matter of law, however, any attempt to replead would be futile. Therefore, Plaintiffs' are not granted leave to replead their conversion claim.

CONCLUSION

For the foregoing reasons, the Memon Defendants' motion for judgment on the pleadings, (Docket Entry 84), is GRANTED IN PART AND DENIED IN PART. Specifically, the Civil RICO claims brought against Hanif Memon, Samina Memon, Abdul Karar, and Muhammad Tobria and Plaintiffs' RICO conspiracy claim, brought

pursuant to 18 U.S.C. 1962(d) are DISMISSED WITHOUT PREJDICE. Plaintiffs' aiding and abetting fraud claim and conspiracy to commit fraud claim are also DISMISSED WITHOUT PREJUDICE. Plaintiffs' conversion claim is DISMISSED WITH PREJUDICE. The balance of the Memon Defendants' motion is DENIED. If Plaintiffs' wish to file an Amended Complaint, they must do so within thirty (30) days of the date of this Order.

Plaintiffs' motion to strike the Gaziani Defendants' Answer and enter a default judgment against them, (Docket Entry 146), is GRANTED. Therefore, the Clerk of the Court is directed to enter certificates of default for Defendants Haji Suleman Gaziani and Mohammad Iqbal Gaziani. The Court will defer ruling on the measure of damages owed by the Gaziani Defendants until the case is resolved against all non-defaulting defendants.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March   23  , 2015
          Central Islip, New York